IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARVIN DARBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv52-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

On February 14, 2006, a jury found the petitioner, Marvin Darby ("Darby"), guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Sentencing was held on June 8, 2006. After finding that Darby's prior state convictions for arson, burglary, and escape constituted "violent felonies" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the district court sentenced Darby to 250 months in prison.[1]  Darby appealed and, on May 11, 2007, the Eleventh Circuit affirmed his conviction and sentence.  *See United States v. Darby*, 232 Fed.Appx. 917 (11th Cir. May 11, 2007) (unpublished). Darby then filed a petition for a writ of certiorari with the United States Supreme Court, which that court denied on June 2, 2008.  *See* 553 U.S. 1086.

---

[1]The ACCA mandates a 15-year mandatory minimum prison sentence for anyone convicted under 18 U.S.C. § 922(g)(1), if that person has three or more previous convictions for "a violent felony or a serious drug offense...."  *See* 18 U.S.C. § 924(e)(1).

On January 18, 2009, using a form designed for filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254, Darby filed a *pro se* petition in this court in which he asserted claims that (1) the district court erred in sentencing him as an armed career criminal under the ACCA because he lacked the requisite convictions for classification as an armed career criminal; (2) the district court erred in relying on circumstantial and insufficient evidence to find that his sentence should be enhanced by two levels because the firearm involved in his offense was stolen; and (3) there was insufficient evidence to sustain his conviction for being a felon in possession of a firearm. (Doc. No. 1.)

Because Darby did not attack a state conviction or sentence in his pleading – instead challenging his federal conviction and sentence – this court entered an order, pursuant to *Castro v. United States*, 540 U.S. 375 (2003), informing Darby of its intention to treat his pleading as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 3.) This court also directed Darby to advise the court whether he wished to (1) proceed before the court under 28 U.S.C. 2255 on the claims presented in his initial pleading; (2) amend his pleading to assert any additional claims under 28 U.S.C. § 2255 on which he wished to challenge the conviction and sentence imposed upon him by this court; or (3) dismiss his pleading. (*Id*.)

On February 13, 2009, Darby filed a "Motion to Amend," in which he stated his desire to amend his pleading to assert additional claims under 28 U.S.C. § 2255 challenging his conviction and sentence. (Doc. No. 4.) Darby's additional claims included allegations that

(1) he was unlawfully arrested without probable cause; (2) his counsel was ineffective for failing to file motions to have the trial judge recuse himself based on a conflict of interest; (3) he was actually innocent, and a fundamental miscarriage of justice resulted because "the United States of America ... violated the constitutional rights of the petitioner from the start in the petitioner's case"; and (4) his counsel was ineffective for failing to investigate the evidence." (*Id*. at pp. 1-2.)

This court entered an order directing the United States to file a response addressing each claim in Darby's § 2255 motion as amended. (Doc. No. 7.) The United States then filed a response in which it argued that Darby's motion was time-barred by the one-year period of limitation applicable to motions filed under 28 U.S.C. § 2255.[2] (Doc. No. 15.) In light of the United States' response, the court entered an order directing Darby to show cause why his § 2255 motion should not be dismissed because it was not filed within the one-year limitation period. (Doc. No. 17.) Darby replied, arguing, *inter alia*, that he had presented a valid claim of actual innocence that excused the untimeliness of his § 2255 motion and any other applicable procedural defaults. (Doc. No. 18.)

On November 2, 2010, the court entered an order directing the government to file a supplemental response addressing the following questions:

Whether in light of the recent holdings in *Begay v. United States*, 553 U.S. 137

---

[2]The government maintained that Darby's conviction became final on August 9, 2007 – 90 days after entry of the Eleventh Circuit's judgment affirming the conviction – and that his § 2255 motion was thus filed several months after expiration of the one-year limitation period.

(2008), and *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010), Darby was erroneously sentenced as an armed career criminal and is thus "actually innocent" of being an armed career criminal, and whether, as a result, he is entitled to be resentenced without the armed career criminal enhancement and with the benefit of any applicable reduction?[3]

(Doc. No. 22 at p. 1.)  In entering this order, this court's particular concern was whether, under the current state of the law, Darby's prior conviction of escape in the third degree in violation of § 13A-10-33, Ala. Code 1975, constitutes a "violent felony" within the meaning of the ACCA and whether,[4] if his escape conviction were not a violent felony under the ACCA, Darby may collaterally attack his sentence, which was based on his classification as

---

[3]In *Begay v. United States*, 553 U.S. 137 (2008), the Supreme Court narrowed the scope of what constitutes a "violent felony" for purposes of the ACCA.  In *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010) (decided on June 21, 2010), the Eleventh Circuit stated that *Begay* is a "circuit law busting, retroactive Supreme Court decision," 609 F.3d at 1164, and held that a defendant erroneously sentenced as a career offender based on a prior conviction that does not constitute a "violent felony" under the ACCA is "actually innocent" of being a career offender, and thus may collaterally attack his erroneous classification as a career offender and the sentence resulting from that classification. *Id*. at 1165-66.  However, on November 3, 2010 (the day after this court entered its order requesting a supplemental answer from the government in Darby's case), the Eleventh Circuit vacated its decision in *Gilbert* for the purpose of holding a rehearing en banc. *See Gilbert v. United States*, 625 F.3d 716 (11th Cir. Nov. 3, 2010).  A decision has not yet been handed down by the en banc *Gilbert* court.

[4]The relevant portion of the ACCA defines "violent felony" as a felony that:

(i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)  is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*...."

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The above-emphasized language of the statute is often referred to as the ACCA's "residual clause" or "residual provision." *See, e.g., United States v. Harrison*, 558 F.3d 1280, 1284 (11th Cir. 2009); *see also James v. United States*, 550 U.S. 192, 197 (2007).

an armed career criminal using his escape conviction as one of the three predicate violent felonies required to trigger application of the ACCA. (*Id.*)

On November 23, 2010, the government filed its supplemental response pursuant to this court's order. (Doc. No. 23.) In its supplemental response, the government changed its previous position (in which it had argued that Darby's § 2255 motion, *en toto*, was time-barred) and instead maintained that this court could properly reach the merits of Ground One of Darby's § 2255 motion, i.e., his claim that he lacked the requisite convictions for classification as an armed career criminal and was therefore erroneously sentenced as an armed career criminal under the ACCA. (*Id.*) The government specifically asserted:

> On January 13, 2009, the Supreme Court held that a conviction for failure-to-report would not constitute a violent felony under the ACCA. *See Chambers v. United States*, 129 S. Ct. 687 (2009). Here, defendant filed his petition in the immediate aftermath of *Chambers*. Therefore Ground One of his Petition is timely, *see* 28 U.S.C. § 2255(f)(3), and the Government withdraws its assertion of the statute of limitations as to Ground One. Moreover, since defendant previously raised the ACCA issue both in the district court and on appeal, there is no procedural default, and the Court need not determine whether he is "actually innocent" of the sentencing enhancement. Accordingly, there is no bar to the Court considering the merits of defendant's claim.[5]

(Doc. No. 23 at p. 2.) The government additionally conceded in its supplemental response that, under the current state of Eleventh Circuit law, a conviction in Alabama for third-degree escape based on flight from the police (as Darby is alleged to have done) would not

---

[5]Although it withdrew its previous assertion of the statute of limitations as to Ground One of Darby's § 2255 motion, the government adhered to its previous position that the remaining claims in Darby's motion are time-barred. (Doc. No. 23 at p. 1 n.1 & p. 5.)

meet the requirements of a "violent felony" under the ACCA and consequently could not be used as a qualifying predicate conviction for purposes of the ACCA. (*Id.* at pp. 2-4.) However, the government requested that this court stay any decision on the issue presented in Ground One of Darby's § 2255 motion pending a decision by the United States Supreme Court in *Sykes v. United States*, No. 09-11311, *orally argued* Jan. 12, 2011.[6]

In *Sykes*, the Supreme Court has been presented with the question of whether a felony conviction for fleeing law enforcement in a vehicle, in violation of an Indiana statute, Ind. Code § 35-44-3-3(b)(1)(A), qualifies as a "violent felony" conviction for purposes of application of the ACCA. The government maintains that the Supreme Court's decision in *Sykes* will "clarify[ ] the law in this area" as it applies to Darby and that this court should therefore hold this matter in abeyance until *Sykes* is decided. (Doc. No. 23 at p. 5.)

After careful consideration of the § 2255 motion as amended, the entire record in this case, and the relevant law, this court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Darby's § 2255 motion should be granted in part and denied in part.

## II.   DISCUSSION

### A.   The Government's Request for a Stay in this Case

This court declines to issue a stay in Darby's case pending a decision by the Supreme Court in *Sykes*, *supra*. The crime at issue in *Sykes*, fleeing law enforcement in a vehicle in

---

[6]*See United States v. Sykes*, 598 F.3d 334 (7th Cir. 2010), cert. granted, *Sykes v. United States*, __ U.S. __ , 131 S.Ct. 63 (Sep. 28, 2010) (No. 09-11311).

violation of Ind. Code § 35-44-3-3(b)(1)(A), is not sufficiently similar to the crime of escape in the third degree set forth at § 13A-10-33, Ala. Code 1975, to warrant the conclusion that a decision by the Supreme Court in *Sykes* will clarify the law as it applies to Darby, and specifically, whether escape in the third degree pursuant to § 13A-10-33 is a "violent felony" within the meaning of the ACCA. The statutory language of Ind. Code § 35-44-3-3(b)(1)(A) provides as a specific element of that offense that the flight from law enforcement be committed in a vehicle, an offense element arguably encompassing the possibility of "a serious potential risk of physical injury to another" not present in the statutory language of § 13A-10-33.[7] In contrast, Section 13A-10-33 simply criminalizes "escapes or attempts to escape from custody." *See* § 13A-10-33(a), Ala. Code 1975. Moreover, the record in *Sykes* suggests that the Supreme Court's chief concern in examining Ind. Code § 35-44-3-3(b)(1)(A) in light of the ACCA's requirements is to determine whether the *possibility* that flight from law enforcement in a vehicle may *escalate* to behavior that poses a serious potential risk of physical injury is enough to satisfy the requirements of a violent felony under the ACCA, or whether the serious potential risk of physical injury must be inherent in the express statutory elements of an offense for the offense to qualify as "violent" for

---

[7]Under Ind. Code § 35-44-3-3(b)(1)(A), "[a] person who knowingly or intentionally ... flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop, commits resisting law enforcement, a ... Class D felony if ... the person uses a vehicle to commit the offense." *See* Ind. Code § 35-44-3-3(b)(1)(A)

purposes of the ACCA.[8]  Even if the Supreme Court were to decide that the possibility of serious physical injury resulting from flight from law enforcement in a vehicle is enough to qualify a violation of Ind. Code § 35-44-3-3(b)(1)(A) as a violent felony (because of the dangers attendant to fleeing at high speed in an automobile), such a holding would have only attenuated significance concerning the very general language of § 13A-10-33, Ala. Code 1975, which, for example, makes it possible to commit the offense of third-degree escape without the use of a vehicle.  In other words, even a broad reading of Ind. Code § 35-44-3-3(b)(1)(A) finding a violation of that statute to constitute a violent felony under the ACCA would have little bearing on an interpretation of § 13A-10-33 in light of the ACCA's requirements.  For these reasons, this court declines to issue a stay in Darby's case.

**B.   Darby's Claim That Escape in the Third Degree, in Violation of § 13A-10-33, Ala. Code 1975, Is Not a Violent Felony for Purposes of the ACCA**

   *1.   Government's Waiver of Time-bar and Procedural-default Defenses*

The court requested a supplemental answer from the government in part to obtain argument on the question of whether a collateral attack by Darby on his sentence was time-

---

   [8]Underlying this inquiry is the question of how to correctly apply the "categorical approach" for determining whether a prior conviction is a "violent felony," set out by the Supreme Court in *Begay v. United States*, 553 U.S. 137 (2008).  The categorical approach requires a court to first categorize the proscribed conduct by examining the elements of the offense in order to understand how the offense is committed in the generic sense – and not in terms of how an individual offender might have committed the offense on a particular occasion.  *Begay*, 553 U.S. at 141.  *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (adopting this "categorical approach"); *see also James v. United States*, 550 U.S. 192, 208-09 (2007); *United States v. Harrison*, 558 F.3d 1289, 1285 (11th Cir. 2009).

barred or otherwise procedurally defaulted for purposes of collateral review. The holding in *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010) – that a defendant who is erroneously sentenced as a career offender based on a prior conviction that does not constitute a violent felony under the ACCA is "actually innocent" of being a career offender – suggested that there was no procedural impediment to Darby's seeking collateral review of his sentence on the grounds he has asserted. However, the Eleventh Circuit recently vacated its decision in *Gilbert* for the purpose of holding a rehearing en banc. *See Gilbert v. United States*, 625 F.3d 716 (11th Cir. Nov. 3, 2010). An en banc decision has yet to issue in that case. Further, for purposes of Darby's case, the government has withdrawn its assertion of the statute of limitations as a bar to review of Darby's claim that he was improperly sentenced under the ACCA and has expressly waived any procedural-default defense as to this issue. As noted above, the government has conceded that "there is no bar to the Court considering the merits of defendant's claim." (Doc. No. 23 at p. 2.)

**2. *The Merits of Darby's Claim Regarding His Prior Conviction for Escape in the Third Degree***

The government also concedes that the law in this circuit is inconsistent with the view that escape in the third degree, as set forth in § 13A-10-33, Ala. Code 1975, constitutes a violent felony for purposes of the ACCA. As the government states:

> Shortly after *Chambers* [*v. United States*, 129 S. Ct. 687 (2009)], the Eleventh Circuit held that the crime of vehicular eluding of the police did not constitute a violent felony under *Chambers*. *See United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009) (fleeing and eluding police not violent felony). Shortly thereafter, relying on *Harrison*, Judge Thompson held that Escape Third is not

9

a violent felony for purposes of the ACCA.  *See United States v. Lowery*, 599 F.Supp.2d 1299 (M.D. Ala. 2009).  Then, in *United States v. Hopkins*, 577 F.3d 507, 509-515 (3rd Cir. 2009), the [Third Circuit Court of Appeals], relying on *Harrison*, held that a conviction for escape – based on a defendant's running away from a police officer who was attempting to arrest him – was not a crime of violence.  In *United States v. Lee*, 586 F.3d 859, 866-874 (11th Cir. 2009), the court cited *Hopkins* with approval in holding that a "walkaway" escape is not a violent felony.

(Doc. No. 23 at p. 4.)

The government suggests that a decision by the Supreme Court affirming the Seventh Circuit in *Sykes* may undermine the Eleventh Circuit's holding in *Harrison* (because the Seventh Circuit in *Sykes* expressed its explicit disagreement with *Harrison*) – and, by extension, Judge Thompson's holding in *Lowery* – because *Harrison* "provided the basis" for the holding in *Lowery*.  (Doc. No. 24 at p. 4.)  However, as noted above, even if the Supreme Court in *Sykes* were to approve a broad reading of Ind. Code § 35-44-3-3(b)(1)(A), so as to find a conviction under that statute to constitute a violent felony under the ACCA, the Indiana statute is not sufficiently similar to the crime of escape in the third degree set forth at § 13A-10-33, Ala. Code 1975, to warrant the conclusion that any decision by the Supreme Court in *Sykes* should affect this court's interpretation of § 13A-10-33 in light of the requirements of the ACCA.[9]

The statute which Judge Thompson considered in *Lowery*, § 13A-10-33, Ala. Code 1975, is the very same Alabama statute at issue in Darby's case.  Applying the "categorical

---

[9]This court recognizes that the statute at issue in *Harrison*, Fla. Stat. § 316.1935(2), which criminalizes fleeing or attempting to elude law enforcement in a vehicle, is more similar to the Indiana statute at issue in *Sykes* than is Alabama's third-degree escape statute, § 13A-10-33.

approach" for determining whether a prior conviction is a violent felony, as set out by the Supreme Court in *Begay v. United States*, 553 U.S. 137, 141 (2008), Judge Thompson concluded that escape in the third degree in violation of § 13A-10-33 is not a violent felony for purposes of the ACCA:

> [B]ecause the statute also includes conduct other than failing to appear at a designated place at a given time, the court must address – employing the Supreme Court and Eleventh Circuit's new approach – whether § 13A-10-33's statutory elements necessarily criminalize some conduct that (1) poses serious potential risk of physical injury to another and (2) is similar in nature to the ACCA's enumerated offenses. *See Begay*, 128 S.Ct. at 1585; *Harrison*, 558 F.3d at 1285-87, 2009 WL 395237, at *4-5.
>
> The first of these two questions – the degree of risk posed – has proven conceptually difficult for judges. In addition to the qualitative issue of defining how much and what kind of risk is a "serious potential risk of physical injury," 18 U.S.C. § 924(e)(2)(B)(ii), judges face a difficult quantitative question concerning how to measure whether the risk surpasses that threshold without relying merely on heavily personal guesswork. *See Harrison*, 558 F.3d at 1294-95, 2009 WL 395237, at *12 ("[C]ourts, without empirical evidence, are left to rely on their own intuition about whether certain kinds of behavior pose serious potential risks of physical injury.").
>
> In *Harrison*, the Eleventh Circuit analyzed whether willfully fleeing from police by refusing to stop after a police car engaged its sirens posed the required level of risk.  The court found that it did not.  While "willfully fleeing a police officer in a motor vehicle" is a "confrontational" and "disobedient" act, it did not meet the required threshold of serious risk.  *Harrison*, 558 F.3d at 1294, 2009 WL 395237, at *11.  Similarly, here, the simple act of escaping from custody (that is, when "the escapee (a) employed no physical force, (b) had not been convicted of a felony, and (c) escaped from a detention other than a penal facility," Commentary, 1975 Ala.Code § 13A-10-33, and not even, as in *Harrison*, when the escape is by vehicle), does not itself involve any use of force or violence to make it likely that the confrontation "will escalate" into violence. *Id*. Without more, the disobedient act of fleeing from custody "does not show that the offender is significantly more likely than others to attack" another person.  *Id*. (quoting *Chambers*, 129 S.Ct. at 692).

The court in *Harrison* wrote: "The argument that willfully eluding an officer, at any speed, is a form of escape, does not impact our analysis. *Chambers* rejects the notion that all escapes are created equal. And, likewise, we reject the notion that all willful fleeing crimes should be treated equally, especially where the Florida statute differentiates between types of willful fleeing." 558 F.3d at 1294, 2009 WL 395237, at *11. Here, the court agrees that not all escapes should be treated equally, especially where, as in *Harrison*, the state statutes differentiate between types of escape.

It is therefore important to remember that, consistent with the categorical approach, the *only* conduct at issue here is the simple act of escape from custody. The question is whether escape, 3rd degree, is a violent felony, not whether every person convicted of that crime must have behaved in a nonviolent way while committing it. Indeed, it is obviously possible to satisfy the elements of escape, 3rd degree – thereby committing the crime – *while also engaging* in conduct that can be considered violent. Just like in *Harrison*, an offender could willfully flee by failing to stop for a police car in a much more reckless and violent way. But as *Harrison* explicitly noted, 558 F.3d at 1293, 2009 WL 395237, at *10, Florida had not decided to make such additional behavior *an element of the offense*, and therefore, that state statute could not qualify as a violent felony because the facts constituting that putative violence would not have been required to have been found in order to sustain a conviction. Or, by way of another example, recalling the factual circumstances surrounding *Begay* and *Chambers*, it is possible to satisfy the elements of drunk driving while also engaging in intentional, violent behavior, and it is possible to commit violent acts while failing to report. In neither case does that possibility convert the crimes of drunk driving or failing to report, as defined by their elements, into "violent felonies."

....

Even if, contrary to the court's findings above, a serious potential risk of physical injury exists when § 13A-10-33 is violated, the second step of the new inquiry requires that the statute must also be similar in kind to the enumerated offenses. *Begay* noted that, because Congress did not mean to include "*all* crimes that present a serious potential risk of physical injury," 128 S.Ct. at 1585, the ACCA's residual clause includes only crimes "roughly similar [to the enumerated offenses], in kind as well as in degree of risk posed." *Harrison*, 558 F.3d at 1286-87, 2009 WL 395237, at *5. *Begay* then identified "at least one" shared aspect of the enumerated crimes: they are all

"purposeful, violent, and aggressive." 128 S.Ct. at 1586. In order to qualify, a statute must, at a minimum, include conduct that shares these three features. *Harrison*, 558 F.3d at 1294-95, 2009 WL 395237, at *12.

Escape, 3rd degree, surely includes conduct that is purposeful but, like in *Harrison*, it does not necessarily include conduct that is violent and aggressive as those terms were used in *Begay*. In *Begay*, the Supreme Court described the shared features of the listed offenses: "That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 128 S.Ct. at 1586. The fact that an offender has committed such a purposeful, violent, and aggressive crime in the past makes that offender, in the judgment of Congress, significantly more dangerous. Thus, the Supreme Court requires, at a minimum, that the prior felony be "purposeful, violent, and aggressive" because Congress has used those characteristics as a proxy for determining which felons are most likely to later use a firearm to harm a victim.

Compared, for example, to prior crimes of violence, mere escape as used in § 13A-10-33 (that is, when "the escapee (a) employed no physical force, (b) had not been convicted of a felony, and (c) escaped from a detention other than a penal facility," Commentary, 1975 Ala.Code § 13A-10-33) does not seem like the kind of crime that indicates anything about the perpetrator's likelihood of later using a gun to harm a victim. The elements of escape, 3rd degree, simply do not involve the kind of "callousness and indifference to the lives of others" that indicate the kind of person who would "deliberately point the gun and pull the trigger." *Harrison*, 558 F.3d at 1294-95, 2009 WL 395237, at *12. Indeed, the elements of mere escape are nonviolent and do not even necessitate that there be a victim. *See* Commentary, Ala.Code § 13A-10-33 (noting that the statute applies when "the escapee ... employed no physical force"). The act of escape, as defined here, does not possess the Congressional proxies of violence and aggression identified by the Supreme Court.

Just as in *Harrison*, a person's mere escape, without anything more, suggests an unwillingness to engage in violent conduct. As *Harrison* noted, a nonviolent and non-reckless fleeing in a car "seems more appropriately characterized as the crime of a fleeing coward – not an armed career criminal bent on inflicting physical injury." 558 F.3d at 1294-95, 2009 WL 395237, at *12. Similarly, here, it cannot be concluded that the elements of § 13A-10-33, which involve only a nonviolent, voluntary, and unauthorized unilateral

termination of custody, suggest an armed career criminal acting in order to inflict injury.  Alabama has another escape statute that includes such conduct among its elements in some circumstances, but that statute is not § 13A-10-33.

The court thus holds, after reviewing the statute pursuant to the categorical approach, that, because there are no statutory elements upon which a § 13A-10-33 conviction can rest that necessarily involve the kinds of conduct covered by § 924(e)(2)(B)(ii)'s residual clause, a prior conviction pursuant to § 13A-10-33 is not a "violent felony."

*United States v. Lowery*, 599 F.Supp.2d 1299, 1303-06 (M.D. Ala. 2009) (footnotes omitted;

emphasis in *Lowery*).

Judge Thompson went on to hold alternatively in *Lowery* that

even if the court were somehow to find otherwise, concluding that the statute described at least one category of conduct that qualified under the ACCA, the government has not produced sufficient information about Lowery's prior offense for the court to determine, consistent with *Shepard* [*v. United States*, 544 U.S. 13, 19-26 (2005)], that his conduct fell into a category encompassed by the term "violent felony."  The government asserts merely that Lowery escaped from the custody of Officer Diane Harris.  A review of the evidentiary basis of the Pre-Sentence Report reveals that the state court indictment merely alleged that Lowery "did escape or attempt to escape from the custody of Lt. Diane Harris."  This information is insufficient to show that Lowery necessarily pled to conduct that is considered a serious potential risk of physical harm to another and similar in kind to the enumerated offenses.  This is particularly true because, as noted earlier, Alabama takes such an expansive view of the term "custody."

599 F. Supp.2d at 1306.

Darby's Presentence Investigation Report ("PSI") reflects only the following facts

underlying his Alabama conviction for third-degree escape:

On May 1, 1998, Troy police officers responded to a domestic disturbance call at the defendant's him. While at the home, the officers recognized Marvin Darby, and were aware that there was an active warrant for his arrest.  As the

14

> officers attempted to place handcuffs on him, Darby broke free and ran from
> the area.

PSI at p. 9, ¶ 21. As was the case with the defendant in *Lowery*, this information is insufficient to show that Darby was convicted of "conduct that is considered a serious potential risk of physical harm to another and similar in kind to the enumerated offenses" in the ACCA. *See Lowery*, 599 F. Supp.2d at 1306. Moreover, there is no other information in the record that would permit this court to determine, consistent with *Shepard v. United States*, 544 U.S. 13 (2005),[10] that the actual facts of Darby's conduct fell into a category encompassed by the term "violent felony."

Thus, under both the "categorical approach" set forth in *Begay* and the "facts of the conviction approach" described in *Shepard*, Darby's conviction for escape in the third degree in violation of § 13A-10-33, Ala. Code 1975, is not a "violent felony" for purposes of the ACCA. Therefore, Darby was erroneously sentenced under the ACCA, and he is entitled to be re-sentenced without the armed career criminal enhancement and with the benefit of any applicable reduction.

## C.     Darby's Remaining Claims

In his original motion, Darby also presented claims that (1) the district court erred in

---

[10]As Judge Thompson notes in *Lowery*, *Shepard v. United States*, 544 U.S. 13, 19-26 (2005), provides that where the "categorical" approach for determining whether an offense in a violent felony under the ACCA "yields ambiguous results – that is, if the fact of conviction and the statutory elements are insufficient to settle the question one way or the other – the court would then be permitted to examine certain limited sources (for example, a state-court charging document of plea colloquy) to determine the underlying facts of a conviction as necessarily proven to the state court." *Lowery*, 599 F.Supp.2d at 1301-02.

relying on circumstantial and insufficient evidence to find that his sentence should be enhanced by two levels because the firearm involved in his offense was stolen, and (2) there was insufficient evidence to sustain his conviction for being a felon in possession of a firearm. (Doc. No. 1 at pp. 7-10.) In his "Motion to Amend," Darby added claims that (1) he was unlawfully arrested without probable cause; (2) his counsel was ineffective for failing to file motions to have the trial judge recuse himself based on a conflict of interest; (3) he was actually innocent, and a fundamental miscarriage of justice resulted because "the United States of America ... violated the constitutional rights of the petitioner from the start in the petitioner's case"; (4) his counsel was ineffective for failing to investigate the evidence." (Doc. No. 4 at pp. 1-2.) The government adheres to its position that all of these claims are time-barred by the one-year limitation period applicable to motions filed under 28 U.S.C. §2255. *See* § 105 of the Antiterrorism and Effective Death Penalty Act ("AEDPA").[11] (Doc. No. 15; Doc. No. 23 at p. 1 n.1 & p. 5.)

### 1.   *Limitation Period*

Paragraph 6 of 28 U.S.C. § 2255 specifies that the one-year period of limitation begins from the latest date of:

(1)  the date on which the judgment of conviction becomes final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United

---

[11]"Section 105 amended 28 U.S.C. § 2255, establishing a one-year 'period of limitation' for motions filed pursuant to § 2255." *Goodman v. United States*, 151 F.3d 1335, 1336 (11th Cir. 1998). This section became effective on April 24, 1996.

States is removed, if the movant was prevented from making a motion by such governmental action;

      (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Darby was convicted on February 14, 2006, and sentenced by the district court on June 8, 2006.  The district court entered its judgment on June 16, 2006.  (*See* Docket Sheet in Case No. 2:05cr177-LSC.)  Darby appealed to the Eleventh Circuit, and on May 11, 2007, that court affirmed his conviction and sentence.  Darby filed nothing with the United States Supreme Court by August 9, 2007, which was the deadline for filing a timely petition for a writ of certiorari.  On August 22, 2007, the Eleventh Circuit made the following entry on its docket:

> [Letter issued to] Marvin Darby[.] Your mtn for an ext to file a Petition for Writ of Cert is a Supreme Court filing. mtn is returned unfiled. An information sheet for filing Certiorari with the Supreme Court is enclosed[.]

(*See* Government Exhibit 1.)  On February 7, 2008, Darby filed a petition for a writ of certiorari with the Supreme Court.  (*See* Government Exhibit 2.)  The Supreme Court denied that petition on June 2, 2008.

Under 28 U.S.C. § 2255, Darby's conviction became final on August 9, 2007 – 90 days after entry of the appellate court's judgment affirming his conviction and sentence. When a defendant does not file a petition for certiorari with the United States Supreme Court,

a conviction becomes "final" for purposes of 28 U.S.C. § 2255 upon expiration of the 90-day period for seeking certiorari review. *See Clay v. United States*, 537 U.S. 522, 532 (2003); *Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002). The untimely petition for a writ of certiorari that Darby filed with the Supreme Court on February 7, 2008, did not extend the date on which the judgment of conviction became final. *See Edwards v. United States*, 295 Fed.Appx. 320, 321 (11th Cir. 2008) (unpublished) ("Because the district court found that Edwards's petition for writ of certiorari with the Supreme Court was untimely, the petition did not toll the time for filing his § 2255 motion"). The time period for Darby to file a petition for a writ of certiorari expired 90 days after issuance of the Eleventh Circuit's opinion, at which time his conviction became final and the one-year limitation period began to run. *See Clay*, 537 U.S. at 528. Because, in the absence of a petition for a writ of certiorari, the judgment became final after expiration of the 90-day period, the judgment did not revert back to being "non-final" because of Darby's subsequently filed – and untimely – petition for a writ of certiorari.

Because Darby's conviction became final on August 9, 2007, he had until August 9, 2008, to file a timely § 2255 motion with this court. However, he filed his § 2255 motion on January 18, 2009 – several months after the one-year limitation period expired.[12]

---

[12]Although the motion was date-stamped "received" in this court on January 22, 2009, it was signed by Darby on January 18, 2009. Under the "mailbox rule," a *pro se* inmate's motion is deemed filed the date it is delivered to prison officials for mailing, here, presumptively January 18, 2009, the date Darby signed it. *See Houston v. Lack,* 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

### 2.    *Statutory Exceptions to Limitation Period*

Darby does not demonstrate that any of the exceptions specified in 28 U.S.C. § 2255 ¶ 6 (2)-(4) apply to the remaining claims in his § 2255 motion as amended, such that the one-year limitation period started to run at some time after his conviction became final, § 2255 ¶ 6 (1).  Specifically, there is no indication that a governmental action prevented Darby from filing a timely § 2255 motion.  *See* § 2255 ¶ 6 (2).  Moreover, Darby's remaining claims do not rest on an alleged "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  § 2255 ¶ 6 (3).  Finally, Darby does not submit any grounds for relief that could not have been put forth earlier under the exercise of due diligence.  28 U.S.C. § 2255 ¶ 6 (4).

### 3.    *Equitable Tolling of Limitation Period*

The limitation period may be equitably tolled on grounds apart from those specified in § 2255 ¶ 6 (2)-(4) "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  *Sandvik v. United States*, 177 F.3d 1269, 1271 (1999); *see also Wade v. Battle*, 379 F.3d 1254, 1264-65 (11th Cir. 2004).  An inmate bears the difficult burden of showing specific facts to support his claim of extraordinary circumstances and due diligence.  *See Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000).  Darby makes no attempt to demonstrate how equitable tolling is warranted in his case.[13]

_____

[13]Even if Darby were to assert that he is entitled to equitable tolling because his lack of
(continued...)

### 4.    *Actual Innocence*

As noted above, Darby maintains that he was actually innocent of the firearm-possession offense of which he was convicted and that a fundamental miscarriage of justice resulted in his case because "the United States of America ... violated the constitutional rights of the petitioner from the start in the petitioner's case."  (Doc. No. 4 at p. 1.)

Actual innocence provides an exception to the one-year filing requirement under § 2255.  *See United States v. Montano*, 398 F.3d 1276, 1280 (11th Cir. 2005) (examining merits of underlying claim of actual innocence in order to determine whether § 2255 movant could surmount time-bar of limitation period); *United States v. Felder*, No. 2:03cv1206, 2006 WL 1526954, *5 (M.D. Ala. May 26, 2006) (finding actual innocence to be a basis for equitable tolling of the limitation period).  *See also Wyzykowski v. Department of Corr.*, 226 F.3d 1213, 1218-19 (11th Cir. 2000).  To establish actual innocence, a defendant must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (citations omitted). "Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 615 (1998).

Darby presents no facts or arguments in support of his cursory claim of actual

---

[13](...continued)
knowledge of the law resulted in his filing his petition for a writ of certiorari "in the wrong court three different times" instead of timely filing it in the United States Supreme Court (*see* Doc. No 1 a p. 1), his claimed ignorance of the law is an insufficient rationale for applying equitable tolling in his case.  *See e.g., Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir. 2000); *see also Jones v. United States*, 304 F.3d 1035, 1044 (11th Cir. 2002).

innocence.  Consequently, he fails to satisfy the stringent standard of *Schlup*, and his actual-innocence claim cannot surmount the time-bar to the filing of his § 2255 motion. Therefore, with the exception of Darby's claim that he was erroneously sentenced under the ACCA when his conviction for third-degree escape was found to be a violent felony (discussed above in this Recommendation), all of Darby's claims for relief are barred from review by the one-year period of limitation.[14]

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Darby's motion to set aside, vacate, or correct his sentence pursuant to 28 U.S.C. § 2255 be GRANTED to the extent that Darby challenges his sentence as an armed career criminal under the ACCA, and that Darby be re-sentenced without the armed career criminal

---

[14]Even if considered on the merits, Darby's remaining claims do not entitle him to any relief. Ample evidence was presented upon which the district court could base its finding that the firearm involved in Darby's offense was stolen, thus justifying application of a sentence enhancement on this basis. There was also sufficient evidence to sustain Darby's conviction for being a felon in possession of a firearm. Darby fails to present sufficient facts to establish that he was unlawfully arrested, and in any event he cannot show how his allegedly unlawful arrest voids his subsequent conviction. See *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). The district judge who tried Darby's case was not, as Darby appears to assert, a former District Attorney in Pike County, Alabama (where Darby had been prosecuted on state charges). A different district judge, who did in fact formerly serve as a District Attorney in Pike County, transferred Darby's case to another judge well before Darby was tried.  Thus, Darby's trial counsel was *not* ineffective for failing seek recusal of the judge who tried his case.  Finally, Darby makes only the most cursory assertions regarding his counsel's alleged ineffectiveness for "failing to investigate the evidence." These assertions are inadequate to show either deficient performance by counsel or any resulting prejudice to Darby's defense. Assuming that Darby is alleging that his counsel was ineffective for failing to investigate the evidence regarding the lack of fingerprints on the firearms involved in his trial, the record reflects that Darby's trial counsel cross-examined the government's witnesses regarding the lack of finger prints, either matching Darby's prints or otherwise.  Darby is not entitled to any relief based on his claim of ineffective assistance of counsel.

enhancement and with the benefit of any applicable reduction.

2.  Darby's motion to set aside, vacate, or correct his sentence pursuant to 28 U.S.C. § 2255 be DENIED to the extent that Darby requests any other relief, because Darby's remaining claims are time-barred pursuant to the one-year limitation period applicable to § 2255 motions.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before March 4, 2011. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 18th day of February, 2011.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE